UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD KIMBRO,

             Plaintiff,

    v.

MIRANDA, et al.,

             Defendants.

No.  2:  12-cv-2154 MCE KJN P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant LaJeunesse's motion to dismiss filed April 12, 2013, for lack of personal jurisdiction and for failing to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).  For the following reasons, the undersigned recommends that defendant's motion be granted.

Plaintiff's Claims

This action is proceeding on the original complaint filed August 17, 2012, against defendants LaJeunesse, Miranda, Clark, McBride, Kelly, Leone, Morris, Hougland and Norman.

In relevant part, plaintiff alleges that in 2006, he was diagnosed with kidney stones while housed at Salinas Valley State Prison ("SVSP").  (ECF No. 1 at 4.)  Plaintiff was later transferred to Mule Creek State Prison ("MCSP").  (Id.)  While at MCSP, plaintiff was sent to a urologist who recommended surgery.  (Id.)  Plaintiff was sent to High Desert State Prison ("HDSP") before

1

1  he could receive surgery.  (Id.)

2  In June 2008, plaintiff was having severe problems with his kidneys.  (Id.)  On June 16,

3  2008, plaintiff was sent to see defendant LaJeunesse, a urologist located in Reno, Nevada.  (Id.)

4  Defendant LaJeunesse told plaintiff that he would receive surgery on his right kidney first and

5  that stints would be implanted during the surgery.  (Id.)  Defendant LaJeunesse told plaintiff that

6  it was important to remove the stints to prevent infection.  (Id.)

7  The first surgery occurred on July 9, 2008, as planned.  (Id.)  On July 18, 2008, plaintiff

8  was seen for follow-up.  (Id. at 5.)  At that time, plaintiff was having problems with the stints and

9  was told that he would have the second surgery within one month and the stints would be

10  removed at that time.  (Id.)

11  Plaintiff was not returned to defendant LaJeunesse for the second surgery on August 18,

12  2008, as planned.  (Id.)  Plaintiff's medications, which had been prescribed following the first

13  surgery, began to expire.  (Id.)  Plaintiff became ill and had large amounts of blood in his urine.

14  (Id.)

15  On September 9, 2008, plaintiff went "man down."  (Id.)  Plaintiff was seen by defendant

16  Dr. Miranda who reordered plaintiff's medications and antibiotics.  (Id. at 6.)  Defendant Miranda

17  told plaintiff that he would be returned to Reno for his second surgery after the infection cleared

18  up.  (Id.)

19  On September 17, 2008, plaintiff returned to Reno for his second surgery.  (Id.)  Plaintiff

20  asked defendant LaJeunesse why he had not been returned to Reno for his second surgery as

21  planned.  (Id.)  Defendant LaJeunesse told plaintiff that he had the appointment, but the

22  California Department of Corrections and Rehabilitation ("CDCR") did not return him.  (Id. at 7.)

23  Plaintiff alleges that defendant LaJeunesse violated his Eighth Amendment right to

24  adequate medical care by failing to ensure that he was returned to Reno for a timely second

25  surgery.  (Id.)

26  Motion to Dismiss for Lack of  Personal Jurisdiction

27  *Legal Standard*

28  A defendant may move to dismiss for lack of personal jurisdiction under Federal Rule of

2

1  Civil Procedure 12(b)(2). The plaintiff bears the burden of establishing personal jurisdiction.

2  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Where the motion

3  is based on written materials rather than an evidentiary hearing, the plaintiff need only make a

4  primary showing of jurisdictional facts.  Id.  Although the plaintiff cannot rest on the allegations

5  of the complaint, uncontroverted allegations must be taken as true.  Id.  The court need not,

6  however, assume the truth of conclusory allegations.  Nicosia v. De Rooy, 72 F.Supp.2d 1093,

7  1097 (N.D.Cal. 1999).  "Conflicts between parties over statements contained in affidavits must be

8  resolved in the plaintiff's favor."  Schwarzenegger, 374 F.3d at 800.  The plaintiff's evidence

9  must, however, be admissible.  Nicosia, 72 F.Supp.2d at 1097.

10        The exercise of personal jurisdiction over a nonresident defendant must be authorized

11  under the state's long-arm statute and must satisfy the due process clause of the United States

12  Constitution.  See Pac. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir.

13  1985).  California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so

14  long as it comports with federal due process.  See Cal. Civ. Proc. Code § 410.10; Schwarzenegger

15  v. Fred Martin Motor Co., 374 F.3d 797, 800–01 (9th Cir. 2004).  "For a court to exercise

16  personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum

17  contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional

18  notions of fair play and substantial justice.'"  Fred Martin Motor, 374 F.3d at 801 (quoting Int'l

19  Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

20        A federal district court may exercise either general or specific personal jurisdiction.

21  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 (1984).

22        To establish general jurisdiction, a plaintiff must demonstrate that the defendant has the

23  kind of "continuous and systematic" contacts with the forum state that "approximate physical

24  presence."  Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).

25  A plaintiff may rely on such factors as whether the defendant makes sales, solicits, or engages in

26  business in the forum state, serves the state's markets, designates an agent for service of process,

27  holds a license, or is incorporated there.  See id.  A defendant whose contacts with the forum are

28  substantial, continuous, and systematic is subject to a court's jurisdiction even if the suit concerns

3

1  matters not arising out of his contacts with the forum.  See Glencore Grain Rotterdam B.V. v.

2  Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

3        To establish specific personal jurisdiction, a plaintiff must plead that (1) the defendant has

4  purposefully directed his activities to, or consummated some transaction with, the forum or a

5  resident thereof; or performed some act by which he purposefully availed himself of the privilege

6  of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2)

7  the claim is one that arises out of or relates to the defendant's forum-related activities; and (3) the

8  exercise of jurisdiction comports with notions of fair play and substantial justice.  Dole Food Co.,

9  Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).

10        Courts in the Ninth Circuit apply a "but for" test to determine whether the second

11  requirement for specific personal jurisdiction, i.e., whether a claim arises out of a defendant's

12  forum-related activities, has been satisfied.  In re Western State Wholesale Natural Gas Antitrust

13  Litigation, 715 F.3d 716, 742 (9th Cir. 2013).  "Under the 'but for' test, a lawsuit arises out of a

14  defendant's contacts with the forum state if a direct nexus exists between those contacts and the

15  cause of action."  Id.

16       *Analysis*

17        In the motion to dismiss, defendant argues that plaintiff's complaint is devoid of any

18  allegations supporting either general or specific jurisdiction.  Defendant argues, and the

19  undersigned agrees, that the complaint and attached exhibits, do not demonstrate continuous or

20  systematic contacts by defendant with California, which would support a claim for general

21  jurisdiction.  Defendant observes that plaintiff's exhibits attached to his complaint indicate that

22  defendant had a medical practice in Reno, Nevada.  There are no allegations that defendant

23  rendered treatment to plaintiff at HDSP or otherwise had substantial contacts with California.  For

24  this reason, the undersigned finds that plaintiff has not established general personal jurisdiction.

25        Defendant argues, and the undersigned agrees, that the complaint and attached exhibits, do

26  not demonstrate that defendant consummated a transaction in California or otherwise availed

27  herself of the privilege of conducting business activities in California.  Defendant observes that

28  plaintiff's claim against defendant is that she failed to contact HDSP and have him returned to

1   Reno for his second surgery.  This alleged incident occurred in Nevada.

2        As for the second requirement for specific personal jurisdiction, the undersigned finds that

3   plaintiff has not met the "but for" test.  Plaintiff has not demonstrated that a direct nexus exists

4   between defendant LaJeunesse's contacts with California and plaintiff's cause of action naming

5   him.  In other words, plaintiff's claim against defendant would have arisen regardless of

6   defendant's contacts with California because the challenged action occurred in Nevada.

7        In his opposition to defendant LaJeunesse's motion to dismiss, plaintiff argues that

8   personal jurisdiction exists because defendant received a payment from the state of California.

9   (ECF No. 46 at 7.)   The undersigned does not find that defendant LaJeunesse's receipt of

10   payment from the state of California for her treatment of plaintiff constitutes a "continuous and

11   systematic" contact with the state of California.  These circumstances also do not demonstrate

12   that defendant LaJeunesse purposefully availed herself of doing business in California.  Plaintiff

13   does not claim, for example, that defendant had a contract with CDCR for treating inmates or

14   solicited for patients in California.

15        The undersigned notes that in <u>Cubbage v. Merchant</u>, 744 F.2d 665 (9th Cir. 1984), the

16   Ninth Circuit found that a California district court could exercise personal jurisdiction over

17   nonresident physicians and a hospital.  In <u>Cubbage</u>, the defendant doctors practiced in an Arizona

18   hospital on the California/Arizona border.  744 F.2d at 667.  The defendant doctors were licensed

19   to practice medicine in Arizona, but not California.  <u>Id.</u>  The defendant doctors treated the

20   plaintiff for an ulcer during October-November of 1981.  <u>Id.</u>

21        In <u>Cubbage</u>, the Ninth Circuit found that a California district court had personal

22   jurisdiction over the defendant doctors based on the following factors.  The defendant doctors

23   applied for and received Medi-Cal numbers from the State of California.  <u>Id.</u> at 668.  A Medi-Cal

24   number permits a health care provided to receive reimbursement from the state for services

25   rendered to eligible California residents.  <u>Id.</u>  Over one-quarter of the hospital's patients were

26   California residents and defendant doctors received reimbursement from the Medi-Cal program.

27   <u>Id.</u>  In finding personal jurisdiction over defendant doctors and the defendant hospital, the Ninth

28   Circuit also noted that the defendant doctors maintained a white page listing in the border

1  California town telephone directory, and the defendant hospital advertised in the yellow pages of

2  the same directory.  Id.

3          The Ninth Circuit applied Cubbage  in an unpublished case with facts similar to

4  those in the instant case.  See Harrison v. Butler, 1997 WL 730259 (9th Cir. 1997).  In Harrison,

5  the plaintiff sued a Nevada hospital and doctors who practiced at that hospital in an Arizona

6  district court.  Id. at *1.  The defendants moved to dismiss for lack of personal jurisdiction.  The

7  Ninth Circuit found that there were insufficient contacts between the defendants and Arizona to

8  create specific personal jurisdiction.  Id.

> Dr. Butler did not avail himself of the legal protection of Arizona
> by taking any deliberate action within Arizona with regard to his
> treatment of Mr. Harrison.  Dr. Butler's medical diagnosis, which
> Mrs. Harrison alleges was negligent, occurred in Nevada.   Dr.
> Butler's decision to refer Mr. Harrison for a surgical consultant
> rather than to a hospital for immediate surgery, which Mrs.
> Harrison alleges was negligent, was made in Nevada.   The *only*
> contact Dr. Butler had with the forum state in his treatment of Mr.
> Harrison was his telephone call to Dr. Paget to arrange the
> appointment in Arizona.  This is not sufficient.
>
> ****
>
> This case is also unlike Cubbage v. Merchent, 744 F.2d 665 (9th
> Cir. 1984). In Cubbage, also a medical malpractice action, the
> appellee doctors, who practiced medicine in Arizona, were holders
> of "Medi-Cal numbers from the State of California," which entitled
> them to receive reimbursement from California for services
> rendered to eligible California residents. Id. at 668. Over one-
> quarter of the hospital's patients were California residents, and the
> hospital advertised their services in a California yellow pages
> listing while the doctors maintained a white pages listing in a
> California directory. Id. In this case, there is no dispute that Dr.
> Butler does not solicit business in Arizona generally and did not
> solicit Mr. Harrison's business in Arizona. There is also no dispute
> that Mr. Harrison did not decide to visit LMC based on any
> information he obtained in Arizona or any activity by the appellees
> in Arizona. Although LMC was listed in the white pages in an
> Arizona directory, we have noted that "a telephone listing, without
> further solicitation, is not enough in itself to confer jurisdiction." Id.
> at 668-69 (citation omitted).
>
> Finally, the fact that Mr. Harrison died in Arizona is irrelevant. Any
> negligent act that can be alleged against the appellees took place in
> Nevada. We agree with the sentiments we expressed over twenty-
> five years ago in Wright v. Yackley, 459 F.2d 287 (9th Cir.1972):
>
>> In the case of personal services focus must be on the place
>> where the services are rendered, since this is the place of the

receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

Id. at 289-90 (emphasis added). Because the alleged acts of negligence committed by Dr. Butler occurred exclusively in Nevada, and there is no evidence that the appellees purposefully availed themselves of the protection of Arizona laws for any act in this case, the district court in Arizona had no specific personal jurisdiction over the appellees.

B. Forum-Related Activities

Even though Mrs. Harrison's claim of specific personal jurisdiction fails the first requirement, an analysis of the second requirement is appropriate for two reasons. First, the district court relied on this requirement in its dismissal order. Second, the district court was correct; even if Mrs. Harrison could meet the first requirement, she fails the second requirement.

We rely "on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard, 65 F.3d at 1500 (citing Shute v. Carnival Cruise Lines, 897 F.2d 377 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585 (1991)). Although Shute was reversed, the Supreme Court did not reject the "but for" test, and subsequent cases in this circuit have deemed the test to have survived. Id. See also Doe, 112 F.3d at 1051 n.7 ("Although Shute has been questioned, the 'but for' test remains viable.").

Mrs. Harrison's claims against these appellees would have arisen regardless of Dr. Butler's contacts with Arizona because the allegedly negligent acts occurred entirely in Nevada. It is certainly true that Mrs. Harrison's claims against Dr. Paget and the other Arizona defendants would not have arisen but for Dr. Butler referring Mr. Harrison to that side of the river, but that answers the wrong question. Dr. Butler, a Nevada resident, allegedly misdiagnosed and made a negligent referral for Mr. Harrison, a Texas resident, in Nevada. To recover damages for those negligent

7

acts, Mrs. Harrison should have sued the Nevada defendants in Nevada. The district court correctly concluded that Mrs. Harrison cannot satisfy this circuit's "but for" test for the second requirement.

Id. at *2-*3.

There is no evidence that defendant LaJeunesse had a contract with HDSP to receive inmate patients or that defendant LaJeunesse's practice consisted primarily of patients that were California residents. There is no evidence that defendant LaJeunesse solicited patients from California. The record indicates that defendant LaJeunesse's contact with California was similar to the contact the defendant doctors had with Arizona in Harrison v. Butler, supra, where the Ninth Circuit found no personal jurisdiction.

For the reasons discussed above, the undersigned finds that plaintiff has not met his burden of demonstrating that the court has personal jurisdiction over defendant LaJeunesse. On this ground, defendant's motion should be granted.

Failure to State a Claim

Even if the undersigned were to find personal jurisdiction over defendant LaJeunesse in this action, the undersigned also concludes that plaintiff has failed to state a claim against that defendant.

*Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

8

1   statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

2   upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

3   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4   draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556

5   U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

6   of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

7   896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

8          A motion to dismiss for failure to state a claim should not be granted unless it appears

9   beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

10  entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se

11  pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

12  404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz

13  v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc).  However, the court's liberal

14  interpretation of a pro se complaint may not supply essential elements of the claim that were not

15  pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

16          *Standard for Eighth Amendment Claim*

17          Generally, deliberate indifference to a serious medical need presents a cognizable claim

18  for a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

19  Estelle v. Gamble, 429 U.S. 97, 104 (1976.)  According to Farmer v. Brennan, 511 U.S. 825, 947

20  (1994), "deliberate indifference" to a serious medical need exists "if [the prison official] knows

21  that [the] inmate [] face[s] a substantial risk of serious harm and disregards that risk by failing to

22  take reasonable measures to abate it."  The deliberate indifference standard "is less stringent in

23  cases involving a prisoner's medical needs than in other cases involving harm to incarcerated

24  individuals because 'the State's responsibility to provide inmates with medical care does not

25  conflict with competing administrative concerns."  McGuckin v. Smith, 974 F.2d 1050, 1060 (9th

26  Cir. 1992) (quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)), overruled on other grounds by

27  WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997).  Specifically, a determination

28  of "deliberate indifference" involves two elements:  (1) the seriousness of the prisoner's medical

1    needs; and (2) the nature of the defendant's responses to those needs.  McGuckin, 974 F.2d at

2    1059.

3           First, a serious medical need exits if the failure to treat a prisoner's condition could result

4    in further significant injury or the "unnecessary and wanton infliction of pain."  Id. (citing Estelle,

5    429 U.S. at 104).  Examples of instances where a prisoner has a "serious" need for medical

6    attention include the existence of an injury that a reasonable doctor or patient would find

7    important and worthy of comment or treatment; the presence of a medical condition that

8    significantly affects an individual's daily activities; or the existence of chronic and substantial

9    pain.  McGuckin, 974 F.2d at 1059-60 (citing Wood v. Housewright, 900 F.2d 1332, 1337-41

10   (9th Cir. 1990).

11          Second, the nature of a defendant's response must be such that the defendant purposefully

12   ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate

13   indifference" to be established.  McGuckin, 974 F.2d at 1060.  Deliberate indifference may occur

14   when prison officials deny, delay or intentionally interfere with medical treatment, or may be

15   shown by the way in which prison physicians provide medical care."  Hutchinson v. United

16   States, 838 F.2d 390, 392 (9th Cir. 1988).  In order for deliberate indifference to be established,

17   there must first be a purposeful act or failure to act on the part of the defendant and resulting

18   harm.  See McGuckin, 974 F.2d at 1060.  "A defendant must purposefully ignore or fail to

19   respond to a prisoner's pain or possible medical need in order for deliberate indifference to be

20   established." Id.  Second, there must be resulting harm from the defendant's activities.  (Id.)  The

21   needless suffering of pain may be sufficient to demonstrate further harm.  Clement v. Gomez, 298

22   F.3d 898, 904 (9th Cir. 2002).

23          *Analysis*

24          Defendant LaJeunesse argues that plaintiff has failed to state a colorable Eighth

25   Amendment claim.  Plaintiff alleges that defendant was deliberately indifferent to his serious

26   medical needs because defendant did not call HDSP and ask plaintiff to be returned for his second

27   surgery.  Defendant contends that these allegations do not rise to an Eighth Amendment claim.

28   ////

1    As noted above, in the complaint plaintiff alleges that when he was returned to Reno for

2  the second surgery on September 17, 2008, defendant LaJeunesse told him that he had the

3  appointment on August 18, 2008 for his second surgery, but CDCR did not return him.  These

4  allegations, standing alone, do not demonstrate deliberate indifference by defendant LaJeunesse.

5  Plaintiff does not claim that defendant had any control over when he would be returned to Reno

6  for the second surgery.  Plaintiff's opposition contains no allegations suggesting that defendant

7  LaJeunesse had any control over plaintiff's transportation back to Reno for the second surgery.

8  For these reasons, the undersigned finds that plaintiff has not stated a colorable Eighth

9  Amendment claim against defendant LaJeunesse and recommends that she be dismissed on this

10  ground.

11    Defendant also moves to dismiss on grounds that she is not a state actor.  In order to state

12  a claim under § 1983, a plaintiff must allege that:  (1) defendant was acting under color of state

13  law at the time the complained of act was committed; and (2) defendant's conduct deprived

14  plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United

15  States.  42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988).

16    A private citizen can be liable under Section 1983 if he was a "willful participant in joint

17  activity with the State or its agents."  United States v. Price, 383 U.S. 787, 794 (1966).  In West,

18  the Court held that a doctor who was contracted with the state to provide medical services to

19  inmates at a state prison hospital, acted under color of state law when he treated an inmate.  Id. at

20  55.  The Court held, "The traditional definition of acting under color of state law requires that the

21  defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made

22  possible only because the wrongdoer is clothed with the authority of state law.'"  Id. at 49.

23    In the instant case, plaintiff does not allege that defendant LaJeunesse had a contract with

24  CDCR or that she treated plaintiff, or any other prisoner, at a California prison.  For these

25  reasons, the undersigned finds that defendant LaJeunesse should be dismissed on grounds that

26  plaintiff has not demonstrated that she is a state actor.

27    Although this action is proceeding on the original complaint, plaintiff is not granted leave

28  to amend for two reasons:  1) plaintiff's opposition contains no allegations supporting a claim for

1  deliberate indifference or suggesting that defendant was a state actor; and 2) the court lacks

2  personal jurisdiction over this defendant.

3  Statute of Limitations

4         Defendant also moves to dismiss plaintiff's claims on grounds that they are barred by the

5  statute of limitations.  For reasons recommending granting defendant's motion discussed above,

6  the undersigned need not reach this issue.

7  Conclusion

8         Accordingly, IT IS HEREBY RECOMMENDED that defendant LaJeunesse's motion to

9  dismiss (ECF No. 25) be granted on the grounds discussed above.

10        These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

15  objections shall be filed and served within fourteen days after service of the objections.  The

16  parties are advised that failure to file objections within the specified time may waive the right to

17  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  Dated:  October 4, 2013

19

20  kim2154.mtd

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28