UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD KIMBRO, | No. 2: 12-cv-2154 MCE KJN P |
| Plaintiff, | ORDER AND |
| v. | FINDINGS AND RECOMMENDATIONS |
| MIRANDA, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss filed May 16, 2013 on behalf of defendants Hougland, Miranda, McBride, Clark, Leone, Morris and Kelly.[1]  Defendants move to dismiss (1) certain claims on the grounds that plaintiff failed to exhaust his administrative remedies, and (2) other claims on the grounds that plaintiff failed to state a colorable claim for relief pursuant to Federal Rule of Civil Procedure 12(b) and 12(b)(6).

For the following reasons, the undersigned orders defendants' motion to dismiss for failure to state a colorable claim for relief is granted with leave to amend.  The undersigned also recommends that defendants' motion to dismiss for failure to exhaust administrative remedies be granted.

---

[1] Defendant Norman has not yet been served.  Defendant LaJeunesse is represented by separate counsel.

1

Plaintiff's Claims

This action is proceeding on the original complaint filed August 17, 2012. (ECF No. 1.) In relevant part, plaintiff alleges that in 2006, he was diagnosed with kidney stones while housed at Salinas Valley State Prison ("SVSP"). (ECF No. 1 at 4.) Plaintiff was later transferred to Mule Creek State Prison ("MCSP"). (Id.) While at MCSP, plaintiff was sent to a urologist who recommended surgery. (Id.) Plaintiff was sent to High Desert State Prison ("HDSP") before he could receive surgery. (Id.)

In June 2008, plaintiff was having severe problems with his kidneys. (Id.) On June 16, 2008, plaintiff was sent to see defendant LaJeunesse, a urologist located in Reno, Nevada. (Id.) Defendant LaJeunesse told plaintiff that he would receive surgery on his right kidney first and that stints would be implanted during the surgery. (Id.) Defendant LaJeunesse told plaintiff that it was important to remove the stints to prevent infection. (Id.)

The first surgery occurred on July 9, 2008, as planned. (Id.) On July 18, 2008, plaintiff was seen for follow-up. (Id. at 5.) At that time, plaintiff was having problems with the stints and was told that he would have the second surgery within one month and the stints would be removed at that time. (Id.)

Plaintiff was not returned to defendant LaJeunesse for the second surgery on August 18, 2008, as planned. (Id.) Plaintiff's medications, which had been prescribed following the first surgery, began to expire. (Id.) Plaintiff became ill and had large amounts of blood in his urine. (Id.)

Plaintiff alleges that from August 18, 2008, until September 9, 2008, Nurse Ling referred plaintiff to defendant Miranda on an emergency basis because of pain and because plaintiff had not been returned to Reno for his second surgery. (Id.) Plaintiff alleges that he suffered an infection because defendant Miranda let his medications expire. (Id.)

On September 9, 2008, plaintiff went "man down." (Id.) Plaintiff was seen by defendant Miranda who reordered plaintiff's medications and antibiotics. (Id. at 6.) Defendant Miranda allegedly told plaintiff that he would be returned to Reno for his second surgery after the infection cleared up. (Id.) Before being seen by defendant Miranda, plaintiff was allegedly denied access

2

to medical care by defendant Clark.  (Id. at 5)  Defendant Clark sent plaintiff to control because plaintiff refused to lock-up without being seen by a doctor.  (Id. at 6.)  Plaintiff was allegedly placed in a cage until a sergeant made sure that plaintiff was seen by defendant Miranda after observing the blood in plaintiff's urine.  (Id.)

On September 17, 2008, plaintiff returned to Reno for his second surgery.  (Id.)  Plaintiff asked defendant LaJeunesse why he had not been returned to Reno for his second surgery as planned.  (Id.)  Defendant LaJeunesse told plaintiff that plaintiff had a scheduled appointment, but the California Department of Corrections and Rehabilitation ("CDCR") did not return him.  (Id. at 7.)

Plaintiff alleges that he was returned to HDSP after his surgery on September 17, 2008.  (Id.)  When plaintiff went to the pill line on the morning of September 18, 2008, to receive his medication, defendant Clark allegedly denied him all of his medications.  (Id.)  Defendant Clark told plaintiff that after he left the prison on September 17, 2008, all of his medications were thrown out.  (Id.)  Plaintiff did not receive his medication for six days and suffered severe pain.  (Id.)

On September 25, 2008, plaintiff saw defendant Miranda.  (Id.)  Defendant Miranda told plaintiff that his medications had not been discontinued as defendant Clark claimed.  (Id.)  Defendant Miranda told defendant Clark to make sure that plaintiff received his medications.  (Id.)

Because plaintiff is hearing and mobility impaired, he allegedly does not hear the announcements that the nurses are coming to deliver the medication.  (Id.)  For this reason, plaintiff was often not ready when the nurses arrived with his medication.  (Id.)  Most nurses allowed him a minute to get to his door for the medication delivery.  (Id.)  Defendant Clark allegedly did not give plaintiff extra time to come to his door for his medication.  (Id.)  Instead, defendant Clark claimed that plaintiff refused his medication.  (Id.)  Plaintiff spoke with defendant Miranda regarding this issue.  (Id. at 10.)  Defendant Miranda told plaintiff to be at his door with water and identification to avoid this problem.  (Id.)

////

On December 23, 2008, plaintiff alleges that he was at his door with his water and identification. (Id.) Defendant Clark passed plaintiff by, claiming that plaintiff had the wrong light on. (Id.) Defendant Clark accused plaintiff of refusing his medication even though he turned the right light on right away. (Id.) Plaintiff became angry and threatened to go man down, because he needed his medication. (Id.)

Later on that day, defendants McBride and Kelly came to plaintiff's door. (Id.) They told plaintiff to cuff up. They told plaintiff that he was being taken to see the sergeant. (Id.) Plaintiff cuffed up in his underwear and shower shoes. (Id.) Defendants took plaintiff outside even though he was wearing only his underwear and shower shoes. (Id. at 11.) Snow was on the ground. (Id. at 10.) Plaintiff told defendants that he needed to put on clothes and his mobility and hearing impaired vest. (Id.) Plaintiff alleges that defendants McBride and Kelly used excessive force against him. (Id. at 11.)

Plaintiff alleges that defendant Hougland placed leg irons on his feet. (Id.) Plaintiff alleges that the leg irons were so tight that they cut into his legs and caused bleeding. (Id.) Plaintiff was then handed off from defendants McBride and Kelly to defendants Leone and Morris. (Id.) Plaintiff had difficulty walking because the leg irons were applied so tightly and caused his legs to bleed. (Id.) Defendants Leone and Morris forced plaintiff to the ground and injured plaintiff's back. (Id.)

Motion to Dismiss--Background

Plaintiff's complaint contains the following claims: 1) defendant Miranda failed to return plaintiff to Reno for his surgery; 2) defendant Miranda allowed plaintiff's medication to expire; 3) on September 9, 2008, defendant Clark denied plaintiff access to medical care and medication; 4) on September 18, 2008, defendant Clark denied plaintiff his medication; 5) on December 23, 2008, defendant Clark denied plaintiff his medication; 6) on December 23, 2008, defendants McBride and Kelly made plaintiff go outside in his underwear and shower shoes when there was snow on the ground; 7) on December 23, 2008, defendants McBride and Kelly used excessive force against plaintiff; 8) on December 23, 2008, defendants Leon and Morris made plaintiff walk outside in his underwear and shower shoes after taking over his transport from defendants

4

1  McBride and Kelly; 9) on December 23, 2008, defendant Hougland applied leg irons so tightly
2  that plaintiff's leg bled; 10) on December 23, 2008, defendants Leon and Morris used excessive
3  force causing plaintiff to suffer back injuries.

4  Defendants move to dismiss the following claims on grounds that they are not
5  administratively exhausted:  1) defendant Miranda failed to return plaintiff to Reno for his second
6  surgery; 2) defendant Miranda allowed plaintiff's medications to expire; 3) on September 9, 2008,
7  defendant Clark denied plaintiff access to medical care and medication; and 4) defendant
8  Hougland applied leg irons too tightly.

9  In the reply to plaintiff's opposition, defendants concede that plaintiff administratively
10 exhausted his claims that defendant Miranda allowed plaintiff's medications to expire (ECF No.
11 48 at 2) and that defendant Hougland applied leg irons too tightly.  (Id. at 3).

12 Defendants move to dismiss the following claims for failing to state colorable claims for
13 relief:  1) defendants Kelly and McBride used excessive force on December 23, 2008; and 2)
14 defendant Clark failed to give plaintiff his medication on December 23, 2008;

15 Defendants concede that plaintiff's claim alleging that defendant Clark denied him
16 medications and access to see defendant Miranda from September 18, 2008, to September 23,
17 2008 is colorable.  For this reason, defendants do not move to dismiss this claim.  Defendants'
18 motion does not address other claims raised in the complaint:  1) on December 23, 2008,
19 defendants McBride and Kelly made plaintiff go outside in his underwear and shower shoes when
20 there was snow on the ground; 2) on December 23, 2008, defendants Leon and Morris made
21 plaintiff go outside in his underwear and shower shoes; and 2) on December 23, 2008, defendants
22 Leon and Morris used excessive force.

23 <u>Failure to Exhaust Administrative Remedies</u>
24 *Legal Standard*
25 The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to
26 provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §
27 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional
28 facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

1    Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516,
2    524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of
3    confinement, whether they involve general circumstances or particular episodes, and whether they
4    allege excessive force or some other wrong. Porter, 534 U.S. at 532.

5        Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal
6    standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S.
7    731, 740 n. 5 (2001). Even when the prisoner seeks relief not available in grievance proceedings,
8    notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at 741. A prisoner
9    "seeking only money damages must complete a prison administrative process that could provide
10   some sort of relief on the complaint stated, but no money." Id. at 734. The fact that the
11   administrative procedure cannot result in the particular form of relief requested by the prisoner
12   does not excuse exhaustion because some sort of relief or responsive action may result from the
13   grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes of exhaustion
14   requirement include allowing prison to take responsive action, filtering out frivolous cases, and
15   creating administrative records).

16       However, a prisoner need not exhaust further levels of review once he has either received
17   all the remedies that are "available" at an intermediate level of review, or has been reliably
18   informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d
19   926, 934–35 (9th Cir. 2005). Because there can be no absence of exhaustion unless some relief
20   remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief
21   remained available, whether at unexhausted levels or through awaiting the results of the relief
22   already granted as a result of that process. Brown, 422 F.3d at 936–37.

23       As noted above, the PLRA requires proper exhaustion of administrative remedies.
24   Woodford v. Ngo, 548 U.S. 81, 83–84 (2006). "Proper exhaustion demands compliance with an
25   agency's deadlines and other critical procedural rules because no adjudicative system can function
26   effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–
27   91. Thus, compliance with prison grievance procedures is required by the PLRA to properly
28   exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

otherwise procedurally defective administrative grievance or appeal." Id. at 83–84.

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy which they can demonstrate as having an adverse effect upon their welfare." Cal.Code Regs. tit. 15, § 3084.1(a) (2010). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. at § 3084 .1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D.Cal. 1997) (citing Cal.Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237–38.

Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Moreover, the court may look beyond the pleadings to determine whether a plaintiff exhausted his administrative remedies. Id. at 1119–20.

Although exhaustion is mandatory, an inmate must only exhaust administrative remedies "as are available." 42 U.S.C. § 1997e(a). Under the Ninth Circuit law, exhaustion is excused when improper screening of grievances occurs. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (citing Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir. 2010)). Sapp establishes that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under [§ 1997e(a) ]." Id. at 823. If prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate cannot pursue the necessary administrative process, and, consequently, his administrative remedies become "unavailable." Id.

////

////

*Analysis-Claim Against Defendant Miranda*

Defendants claim that plaintiff did not file any appeal regarding his claim that defendant Miranda failed to return him for his second surgery in September 2008. Defendants cite the declaration of D. Frazier, the Healthcare Appeals Coordinator at HDSP. (ECF No. 30-2.) According to D. Frazier, plaintiff did not file any health care appeals complaining that defendant Miranda failed to return him for his second surgery scheduled for August 18, 2008. (Id. at 2.)

D. Frazier states that plaintiff filed two health care appeals in September 2008 at the informal level. (Id. at 2.) The first appeal appeal was received on September 15, 2008, and screened out on that date. (Id.) The second appeal was received on September 16, 2008, and partially granted on September 17, 2008. (Id.)

D. Frazier states that he located a copy of an appeal submitted by plaintiff on August 28, 2008, that was partially granted on September 11, 2008. (Id.) D. Frazier states that this appeal requested that medications be refilled but makes no mention of defendant Miranda. (Id.) A copy of this appeal is attached as an exhibit to D. Frazier's declaration. In this appeal, plaintiff states that he has severe kidney stones and requests that his pain medication be refilled. (Id. at 11.) The appeal was partially granted on September 11, 2008, on the grounds that plaintiff was seen by the "PCP," i.e., primary care provider. (Id.) D. Frazier does not state whether plaintiff grieved this appeal any further after it was partially granted.

Defendants have also provided the declaration of L. Zamora, the Chief of the Inmate Correspondence and Appeals Branch ("ICAB") for the California Correctional Health Care Services. (ECF No. 30-3.) L. Zamora states that in August 2008, ICAB began receiving and reviewing all third and final level inmate health care appeals with the exception of complaints about medical staff. (Id. at 2.) Before that time, the Inmate Appeals Branch of the California Department of Corrections and Rehabilitation was responsible for reviewing and deciding medical appeals at the third level of review. (Id.)

L. Zamora states that a search of the relevant records reveals that plaintiff filed no third level, or final, appeals regarding plaintiff's claims against defendant Miranda. (Id. at 2-3.)

////

It appears that plaintiff did not exhaust his administrative remedies regarding his claim that defendant Miranda failed to return him for a second surgery. Plaintiff did not pursue any grievance to the third level of review regarding this claim. Accordingly, defendants' motion to dismiss this claim against defendant Miranda should be granted.

*Analysis—Claim Against Defendant Clark Alleging Denial of Access to Medical Care and Medication on September 9, 2008*

Plaintiff alleges that on September 9, 2008, defendant Clark denied him access to medical care and medication. Defendants argue that plaintiff failed to administratively exhaust this claim, referring to the declarations of D. Frazier and L. Zamora attached to their motion to dismiss.

In his declaration, D. Frazier states that there is no record of plaintiff filing a health care appeal complaining about defendant Clark denying him access to medical care on September 9, 2008. (ECF No. 30-2 at 2.) The exhibits attached to D. Frazier's declaration support this claim. In his declaration, L. Zamora states that plaintiff did not file a grievance alleging that defendant Clark denied him access to medical care on September 9, 2008. (ECF No. 30-3 at 2-3.) The exhibits attached to L. Zamora's declaration support this statement.

In his opposition, plaintiff argues that the grievance he filed on August 28, 2008, referred to in D. Frazier's declaration, exhausted his claim that defendant Clark denied him his medication on September 9, 2008. As noted by defendants in their reply, this appeal was filed before these allegations against defendant Clark arose. Therefore, this appeal could not have put prison officials on notice of this claim.

For the reasons discussed above, the undersigned finds that plaintiff failed to administratively exhaust his claim that defendant Clark denied him access to medical care and medication on September 9, 2008. Accordingly, defendants' motion to dismiss this claim should be granted.

<u>Failure to State a Claim</u>

*Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In

9

considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

*Analysis—Excessive Force Claim Against Defendants McBride and Kelly*

Defendants argue that plaintiff has not stated a colorable excessive force claim against defendants McBride and Kelly. In the complaint, plaintiff alleges only that defendants McBride and Kelly used excessive force against him. (ECF No.1 at 11.) Plaintiff does not include any allegations to support this claim. Standing alone, the statement that defendants used excessive

1    force is so vague and conclusory that the court cannot determine whether plaintiff has a colorable

2    excessive force claim against these defendants. The exhibits attached to the complaint also fail to

3    clarify this claim.

4        In his opposition, plaintiff alleges that there are photographs of his injuries caused by

5    defendants McBride and Kelly. (ECF No. 46 at 5.) While plaintiff may have photographs of the

6    injuries caused by the alleged excessive force, his complaint contains no allegations describing

7    defendants' conduct.

8        For the reasons discussed above, defendants' motion to dismiss plaintiff's excessive force

9    claim against defendants McBride and Kelly is granted with leave to amend. If plaintiff includes

10   this claim in an amended complaint, he must specifically describe defendants' conduct on which

11   the excessive force claim is based.

12       *Analysis – Claim that Defendant Clark Failed to give Plaintiff Medication on December*

13   *23, 2008*

14       Plaintiff alleges that defendant Clark violated plaintiff's Eighth Amendment right to

15   adequate medical care on December 23, 2008. In particular, plaintiff alleges that he was at his

16   door with his water and identification waiting for medication to be distributed. (ECF No. 1 at

17   10.) Defendant Clark allegedly passed plaintiff by, claiming that plaintiff had the wrong light on.

18   (Id.) Defendant Clark accused plaintiff of refusing his medication even though plaintiff turned

19   the right light on right away. (Id.)

20       Defendants argue that plaintiff's claim that defendant Clark violated his Eighth

21   Amendment rights on December 23, 2008, by failing to give him his medication is not colorable.

22   Defendants argue that a mere delay in treatment does not constitute a violation of the Eighth

23   Amendment, unless the delay or denial was harmful. See McGuckin v. Smith, 974 F.2d 1050,

24   1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

25   (9th Cir. 1997) (en banc). The harm caused by delay need not necessarily be "substantial."

26   McGuckin, 974 F.2d at 1060 & n.2.

27       Defendants argue that plaintiff does not allege that he suffered any harm as a result of not

28   receiving his medication on the one occasion alleged on December 23, 2008. Defendants also

1  observe that plaintiff does not identify the type of medications he did not receive.  The
2  undersigned agrees that, as plead, plaintiff's claim against defendant Clark for failing to give him
3  his medication on December 23, 2008, does not state a colorable claim for relief.
4      In his opposition, plaintiff alleges that defendant Clark failed to give him pain medications
5  which caused him to suffer severe pain.  (ECF No. 46 at 6.)  Plaintiff also alleges that defendant
6  Clark refused to give him Flomax, which helped his urine flow and was very important due to his
7  kidney stone situation.  (Id.)  Because plaintiff's opposition identifies the medication he did not
8  receive and the injuries suffered, the motion to dismiss this claim is granted with leave to amend.
9  Plaintiff should include the allegations identifying the missed medication and the injuries he
10 suffered as a result of not receiving them in his amended complaint.  Plaintiff should also address
11 when he next received these medications.  A brief deprivation of medication with no
12 consequences does not state a colorable Eighth Amendment claim.
13 Claims Brought Pursuant to the Americans with Disabilities Act ("ADA")
14     Defendants argue that plaintiff's claim that defendants ignored his ADA status does not
15 state a colorable ADA claim.  Plaintiff does not clearly raise an ADA claim.  However, to the
16 extent plaintiff is attempting to raise an ADA claim, the undersigned finds that plaintiff's claim
17 that defendants' ignored his ADA status does not state a colorable ADA claim.
18     Title II of the ADA "prohibit[s] discrimination on the basis of disability."  Lovell v.
19 Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual
20 with a disability shall, by reason of such disability, be excluded from participation in or be denied
21 the benefits of the services, programs, or activities of a public entity, or be subject to
22 discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within
23 state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also
24 Simmons v. Navajo County, Arizona, 609 F.3d 1011, 1021 (9th Cir. 2010).
25     To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a
26 qualified individual with a disability; (2) he was "excluded from participation in or denied the
27 benefits of the public entity's services, programs, or activities, or was otherwise discriminated
28 against by the public entity;" and (3) "such exclusion or discrimination, or denial of benefits was

1  because of his disability." Simmons, 609 F.3d at 1021 (citations omitted).

2  Plaintiff does not claim that he was excluded from a service, program or activity as a
3  result of defendants' alleged failure to acknowledge his ADA status. Plaintiff's claim that
4  defendants would not allow him to put on his ADA vest also does not rise to an ADA claim.
5  Accordingly, to the extent plaintiff raises ADA claims, defendants' motion to dismiss is granted.

6  Conclusion

7  For the reasons discussed above, the undersigned recommends that defendants' motion to
8  dismiss the claims that defendant Miranda failed to return plaintiff for surgery and that defendant
9  Clark denied plaintiff access to medical care and medication on September 9, 2008, be dismissed
10  on grounds that they are not administratively exhausted. Plaintiff shall not include these claims in
11  an amended complaint.

12  Plaintiff's claims alleging excessive force by defendants McBride and Kelly on December
13  23, 2008, and that defendant Clark failed to give him his medication on that date are dismissed
14  with leave to amend. Plaintiff is informed that an amended complaint must include all claims
15  against all defendants. In other words, the court cannot refer to a prior pleading in order to make
16  plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be
17  complete in itself without reference to any prior pleading.

18  If plaintiff does not file an amended complaint, this action will proceed on the following
19  claims: 1) defendant Miranda allowed plaintiff's medications to expire; 2) on September 18,
20  2008, defendant Clark denied plaintiff his medication; 3) on December 23, 2008, defendants
21  McBride and Kelly made plaintiff go outside in his underwear and shower shoes when there was
22  snow on the ground; 4) on December 23, 2008, defendants Leon and Morris transported plaintiff
23  outside while he was wearing underwear and shower shoes; 5) on December 23, 2008, defendants
24  Leon and Morris used excessive force causing plaintiff to suffer back injuries; and 6) on
25  December 23, 2008, defendant Hougland applied leg irons too tightly.

26  Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No.
27  30) plaintiff's excessive force claim against defendants McBride and Kelly and his claim that
28  defendant Clark failed to give him his medication on December 23, 2008 is granted with leave to

amend; plaintiff is granted thirty days to file an amended complaint; defendants' response to the amended complaint is due twenty days thereafter; if plaintiff does not file an amended complaint, defendants shall file an answer to the original complaint within forty-five days of the date of this order;

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 30) plaintiff's claims alleging that defendant Miranda failed to return plaintiff for surgery and that defendant Clark denied plaintiff medical care and medication on September 9, 2008, be granted on grounds that these claims are not exhausted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 11, 2013

kim2154.mtd(2)

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE