1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD KIMBRO,                          No.  2:  12-cv-2154 MCE KJN P

12              Plaintiff,                     ORDER AND

13        v.                                   FINDINGS AND RECOMMENDATIONS

14   MIRANDA, et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is the motion to dismiss filed May 16, 2013 on

19   behalf of defendants Hougland, Miranda, McBride, Clark, Leone, Morris and Kelly.[1]  Defendants

20   move to dismiss (1) certain claims on the grounds that plaintiff failed to exhaust his

21   administrative remedies, and (2) other claims on the grounds that plaintiff failed to state a

22   colorable claim for relief pursuant to Federal Rule of Civil Procedure 12(b) and 12(b)(6).

23        On October 11, 2013, the undersigned recommended that the motion to dismiss for failure

24   to exhaust administrative remedies be granted.  (ECF No. 52.)  In part, the undersigned found that

25   plaintiff failed to exhaust his administrative remedies as to his claim that defendant Miranda

26   failed to return plaintiff to Reno for surgery.  (Id.)  After reviewing plaintiff's objections to the

27   _____

28   [1]  Defendant Norman has not yet been served.  Defendant LaJeunesse is represented by separate
     counsel.

                                          1

1  findings and recommendations (ECF No. 54), on December 3, 2013, the undersigned vacated the

2  October 11, 2013 findings and recommendations, and ordered defendants to file further briefing

3  addressing whether plaintiff administratively exhausted his claim that defendant Miranda failed to

4  return plaintiff to Reno for surgery.  (ECF No. 61.)

5  　　　On December 17, 2013, defendants filed the further briefing ordered by the court on

6  December 3, 2013.  (ECF No. 63).  After reviewing the record, including defendants' further

7  briefing, the undersigned again recommends that defendants' motion to dismiss for failure to

8  exhaust administrative remedies be granted.  Defendants' motion to dismiss for failure to state a

9  colorable claim for relief is granted with leave to amend.

10  Plaintiff's Claims

11  　　　This action is proceeding on the original complaint filed August 17, 2012.  (ECF No. 1.)

12  In relevant part, plaintiff makes the following allegations.  In 2006, plaintiff was diagnosed with

13  kidney stones while housed at Salinas Valley State Prison ("SVSP").  (ECF No. 1 at 4.)  Plaintiff

14  was later transferred to Mule Creek State Prison ("MCSP").  (Id.)  While at MCSP, plaintiff was

15  sent to a urologist who recommended surgery.  (Id.)  Plaintiff was sent to High Desert State

16  Prison ("HDSP") before he could receive surgery.  (Id. )

17  　　　In June 2008, plaintiff was having severe problems with his kidneys.  (Id.)  On June 16,

18  2008, plaintiff was sent to see defendant LaJeunesse, a urologist located in Reno, Nevada.  (Id.)

19  Defendant LaJeunesse told plaintiff that he would receive surgery on his right kidney first and

20  that stints would be implanted during the surgery.  (Id.)  Defendant LaJeunesse told plaintiff that

21  it was important to remove the stints to prevent infection.  (Id.)

22  　　　The first surgery occurred on July 9, 2008, as planned.  (Id.)  On July 18, 2008, plaintiff

23  was seen for follow-up.  (Id. at 5.)  At that time, plaintiff was having problems with the stints and

24  was told that he would have the second surgery within one month and the stints would be

25  removed at that time.  (Id.)

26  　　　Plaintiff was not returned to defendant LaJeunesse for the second surgery on August 18,

27  2008, as planned.  (Id.)  Plaintiff's medications, which had been prescribed following the first

28  surgery, began to expire.  (Id.)  Plaintiff became ill and had large amounts of blood in his urine.

1  (Id.)

2  Plaintiff alleges that from August 18, 2008, until September 9, 2008, Nurse Ling referred

3  plaintiff to defendant Miranda on an emergency basis because of pain and because plaintiff had

4  not been returned to Reno for his second surgery.  (Id.)  Plaintiff alleges that he suffered an

5  infection because defendant Miranda let his medications expire.  (Id.)

6  On September 9, 2008, plaintiff went "man down."  (Id.)  Plaintiff was seen by defendant

7  Miranda who reordered plaintiff's medications and antibiotics.  (Id. at 6.)  Defendant Miranda

8  allegedly told plaintiff that he would be returned to Reno for his second surgery after the infection

9  cleared up.  (Id.)  Before being seen by defendant Miranda, plaintiff was allegedly denied access

10  to medical care by defendant Clark.  (Id. at 5)  Defendant Clark sent plaintiff to control because

11  plaintiff refused to lock-up without being seen by a doctor.  (Id. at 6.)  Plaintiff was allegedly

12  placed in a cage until a sergeant made sure that plaintiff was seen by defendant Miranda after

13  observing the blood in plaintiff's urine.  (Id.)

14  On September 17, 2008, plaintiff returned to Reno for his second surgery.  (Id.)  Plaintiff

15  asked defendant LaJeunesse why he had not been returned to Reno for his second surgery as

16  planned.  (Id.)  Defendant LaJeunesse told plaintiff that plaintiff had a scheduled appointment, but

17  the California Department of Corrections and Rehabilitation ("CDCR") did not return him.  (Id. at

18  7.)

19  Plaintiff alleges that he was returned to HDSP after his surgery on September 17, 2008.

20  (Id.)  When plaintiff went to the pill line on the morning of September 18, 2008, to receive his

21  medication, defendant Clark allegedly denied plaintiff all of his medications.  (Id.)  Defendant

22  Clark told plaintiff that after he left the prison on September 17, 2008, all of his medications were

23  thrown out.  (Id.)  Plaintiff did not receive his medication for six days and suffered severe pain.

24  (Id.)

25  On September 25, 2008, plaintiff saw defendant Miranda.  (Id.)  Defendant Miranda told

26  plaintiff that his medications had not been discontinued as defendant Clark claimed.  (Id.)

27  Defendant Miranda told defendant Clark to make sure that plaintiff received his medications.

28  (Id.)

1   Because plaintiff is hearing and mobility impaired, he allegedly does not hear the

2   announcements that the nurses are coming to deliver the medication.  (Id.)  For this reason,

3   plaintiff was often not ready when the nurses arrived with his medication.  (Id.)  Most nurses

4   allowed him a minute to get to his door for the medication delivery.  (Id.)  Defendant Clark

5   allegedly did not give plaintiff extra time to come to his door for his medication.  (Id.)  Instead,

6   defendant Clark claimed that plaintiff refused his medication.  (Id.)  Plaintiff spoke with

7   defendant Miranda regarding this issue.  (Id. at 10.)  Defendant Miranda told plaintiff to be at his

8   door with water and identification to avoid this problem.  (Id.)

9   On December 23, 2008, plaintiff alleges that he was at his door with his water and

10   identification.  (Id.)  Defendant Clark passed plaintiff by, claiming that plaintiff had the wrong

11   light on.  (Id.)  Defendant Clark accused plaintiff of refusing his medication even though he

12   turned the right light on right away.  (Id.)  Plaintiff became angry and threatened to go man down,

13   because he needed his medication.  (Id.)

14   Later on that day, defendants McBride and Kelly came to plaintiff's door.  (Id.)  They told

15   plaintiff to cuff up.  They told plaintiff that he was being taken to see the sergeant.  (Id.)  Plaintiff

16   cuffed up in his underwear and shower shoes.  (Id.)  Defendants took plaintiff outside even

17   though he was wearing only his underwear and shower shoes.  (Id. at 11.)  Snow was on the

18   ground.  (Id. at 10.)  Plaintiff told defendants that he needed to put on clothes and his mobility

19   and hearing impaired vest.  (Id.)  Plaintiff alleges that defendants McBride and Kelly used

20   excessive force against him.  (Id. at 11.)

21   Plaintiff alleges that defendant Hougland placed leg irons on his feet.  (Id.)  Plaintiff

22   alleges that the leg irons were so tight that they cut into his legs and caused bleeding.  (Id.)

23   Plaintiff was then handed off from defendants McBride and Kelly to defendants Leone and

24   Morris.  (Id.)  Plaintiff had difficulty walking because the leg irons were applied so tightly and

25   caused his legs to bleed.  (Id.)  Defendants Leone and Morris forced plaintiff to the ground and

26   injured plaintiff's back.  (Id.)

27   ////

28   ////

4

1    Motion to Dismiss--Background

2        Plaintiff's complaint contains the following claims:  1) defendant Miranda failed to return

3    plaintiff to Reno for his surgery; 2) defendant Miranda allowed plaintiff's medication to expire;

4    3) on September 9, 2008, defendant Clark denied plaintiff access to medical care and medication;

5    4) on September 18, 2008, defendant Clark denied plaintiff his medication; 5) on December 23,

6    2008, defendant Clark denied plaintiff his medication; 6) on December 23, 2008, defendants

7    McBride and Kelly made plaintiff go outside in his underwear and shower shoes when there was

8    snow on the ground; 7) on December 23, 2008, defendants McBride and Kelly used excessive

9    force against plaintiff; 8) on December 23, 2008, defendants Leon and Morris made plaintiff walk

10   outside in his underwear and shower shoes after taking over his transport from defendants

11   McBride and Kelly; 9) on December 23, 2008, defendant Hougland applied leg irons so tightly

12   that plaintiff's leg bled; and 10) on December 23, 2008, defendants Leon and Morris used

13   excessive force causing plaintiff to suffer back injuries.

14       Defendants move to dismiss the following claims on the grounds that they are not

15   administratively exhausted:  1) defendant Miranda failed to return plaintiff to Reno for his second

16   surgery; 2) defendant Miranda allowed plaintiff's medications to expire; 3) on September 9, 2008,

17   defendant Clark denied plaintiff access to medical care and medication; and 4) defendant

18   Hougland applied leg irons too tightly.

19       In the reply to plaintiff's opposition, defendants concede that plaintiff administratively

20   exhausted his claims that defendant Miranda allowed plaintiff's medications to expire (ECF No.

21   48 at 2) and that defendant Hougland applied leg irons too tightly.  (Id. at 3).

22       Defendants move to dismiss the following claims for failing to state colorable claims for

23   relief:  1) defendants Kelly and McBride used excessive force on December 23, 2008; and

24   2) defendant Clark failed to give plaintiff his medication on December 23, 2008;

25       Defendants concede that plaintiff's claim alleging that defendant Clark denied him

26   medications and access to see defendant Miranda from September 18, 2008, to September 23,

27   2008, is colorable.  For this reason, defendants do not move to dismiss this claim.  Defendants'

28   motion does not address other claims raised in the complaint:  1) on December 23, 2008,

1   defendants McBride and Kelly made plaintiff go outside in his underwear and shower shoes when

2   there was snow on the ground; 2) on December 23, 2008, defendants Leon and Morris made

3   plaintiff go outside in his underwear and shower shoes; and 2) on December 23, 2008, defendants

4   Leon and Morris used excessive force.

5   Failure to Exhaust Administrative Remedies

6       *Legal Standard*

7       The Prison Litigation Reform Act of 1995 ("PLRA") amended 42 U.S.C. § 1997e to

8   provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §

9   1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

10  facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

11  Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516,

12  524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of

13  confinement, whether they involve general circumstances or particular episodes, and whether they

14  allege excessive force or some other wrong. Porter, 534 U.S. at 532.

15      Exhaustion of all "available" remedies is mandatory; those remedies need not meet federal

16  standards, nor must they be "plain, speedy and effective." Id. at 524; Booth v. Churner, 532 U.S.

17  731, 740 n.5 (2001). Even when the prisoner seeks relief that is not available in grievance

18  proceedings, notably money damages, exhaustion is a prerequisite to suit. Booth, 532 U.S. at

19  741. A prisoner "seeking only money damages must complete a prison administrative process

20  that could provide some sort of relief on the complaint stated, but no money." Id. at 734. The

21  fact that the administrative procedure cannot result in the particular form of relief requested by

22  the prisoner does not excuse exhaustion because some sort of relief or responsive action may

23  result from the grievance. See Booth, 532 U.S. at 737; see also Porter, 534 U.S. at 525 (purposes

24  of exhaustion requirement include allowing prison to take responsive action, filtering out

25  frivolous cases, and creating administrative records).

26      However, a prisoner need not exhaust further levels of review once he has either received

27  all the remedies that are "available" at an intermediate level of review, or has been reliably

28  informed by an administrator that no more remedies are available. Brown v. Valoff, 422 F.3d

6

1   926, 934–35 (9th Cir. 2005).  Because there can be no absence of exhaustion unless some relief

2   remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief

3   remained available, whether at unexhausted levels or through awaiting the results of the relief

4   already granted as a result of that process.  Brown, 422 F.3d at 936–37.

5        As noted above, the PLRA requires proper exhaustion of administrative remedies.

6   Woodford v. Ngo, 548 U.S. 81, 83–84 (2006).  "Proper exhaustion demands compliance with an

7   agency's deadlines and other critical procedural rules because no adjudicative system can function

8   effectively without imposing some orderly structure on the course of its proceedings."  Id. at 90–

9   91.  Thus, compliance with prison grievance procedures is required by the PLRA to properly

10  exhaust.  Id.  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

11  otherwise procedurally defective administrative grievance or appeal."  Id. at 83–84.

12       The State of California provides its prisoners the right to appeal administratively "any

13  departmental decision, action, condition or policy which they can demonstrate as having an

14  adverse effect upon their welfare."  Cal.Code Regs. tit. 15, § 3084.1(a) (2010).  It also provides

15  them the right to file appeals alleging misconduct by correctional officers and officials.  Id. at §

16  3084 .1(e).  In order to exhaust available administrative remedies within this system, a prisoner

17  must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal

18  on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

19  third level appeal to the Director of the California Department of Corrections and Rehabilitation.

20  Barry v. Ratelle, 985 F.Supp. 1235, 1237 (S.D.Cal. 1997) (citing Cal.Code Regs. tit. 15, §

21  3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement

22  under § 1997e(a).  Id. at 1237–38.

23       Non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by

24  defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b).

25  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Moreover, the court may look beyond

26  the pleadings to determine whether a plaintiff exhausted his administrative remedies.  Id. at 1119–

27  20.

28  ////

7

1    Although exhaustion is mandatory, an inmate must only exhaust administrative remedies

2    "as are available." 42 U.S.C. § 1997e(a).  Under the Ninth Circuit law, exhaustion is excused

3    when improper screening of grievances occurs.  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 822 (9th Cir.

4    2010) (citing <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010)).  <u>Sapp</u> establishes that

5    "improper screening of an inmate's administrative grievances renders administrative remedies

6    'effectively unavailable' such that exhaustion is not required under [§ 1997e(a) ]." <u>Id.</u> at 823.  If

7    prison officials screen out an inmate's grievances or appeals for improper reasons, the inmate

8    cannot pursue the necessary administrative process, and, consequently, his administrative

9    remedies become "unavailable." <u>Id.</u>

10    *Analysis - Claim Against Defendant Miranda*

11    Defendants claim that plaintiff did not file any appeal regarding his claim that defendant

12    Miranda failed to return him for his second surgery in September 2008.  Defendants cite the

13    declaration of D. Frazier, the Healthcare Appeals Coordinator at HDSP.  (ECF No. 30-2.)

14    According to D. Frazier, plaintiff did not file any health care appeals complaining that defendant

15    Miranda failed to return him for his second surgery scheduled for August 18, 2008.  (<u>Id.</u> at 2.)

16    D. Frazier states that plaintiff filed two health care appeals in September 2008 at the

17    informal level.  (<u>Id.</u> at 2.)  The first appeal appeal was received on September 15, 2008, and

18    screened out on that date.  (<u>Id.</u>)  The second appeal was received on September 16, 2008, and

19    partially granted on September 17, 2008.  (<u>Id.</u>)

20    D. Frazier states that he located a copy of an appeal submitted by plaintiff on August 28,

21    2008, that was partially granted on September 11, 2008.  (<u>Id.</u>)  D. Frazier states that this appeal

22    requested that medications be refilled but makes no mention of defendant Miranda.  (<u>Id.</u>)  A copy

23    of this appeal is attached as an exhibit to D. Frazier's declaration.  In this appeal, plaintiff states

24    that he has severe kidney stones and requests that his pain medication be refilled.  (<u>Id.</u> at 11.)  The

25    appeal was partially granted on September 11, 2008, on the grounds that plaintiff was seen by the

26    "PCP," i.e., primary care provider.  (<u>Id.</u>)  D. Frazier does not state whether plaintiff grieved this

27    appeal any further after it was partially granted.

28    ////

8

Defendants have also provided the declaration of L. Zamora, the Chief of the Inmate Correspondence and Appeals Branch ("ICAB") for the California Correctional Health Care Services.  (ECF No. 30-3.)  L. Zamora states that in August 2008, ICAB began receiving and reviewing all third and final level inmate health care appeals with the exception of complaints about medical staff.  (Id. at 2.)  Before that time, the Inmate Appeals Branch of the California Department of Corrections and Rehabilitation was responsible for reviewing and deciding medical appeals at the third level of review.  (Id.)

L. Zamora states that a search of the relevant records reveals that plaintiff filed no third level, or final, appeals regarding plaintiff's claims against defendant Miranda.  (Id. at 2-3.)

In his objections to the October 11, 2013 findings and recommendations, plaintiff argues that his emergency grievance filed September 7, 2008, exhausted his claim alleging that defendant Miranda failed to return him to Reno for surgery.  (ECF No. 54.)  Attached to plaintiff's objections is a copy of this grievance.  In the section of the grievance for describing the problem, plaintiff states,

> I am due for surgery on kidney stones soon.  Blood in urin[e].  Stints in kidneys.  Pain meds have run out.  Need refill.  No one is doing anything for.  Saw Doctor Andrews last week.  He refused refill saying I must see some other doctor.  Surgery was supposed to be a few weeks ago.  Need meds refilled now!

(ECF No. 54 at 4.)

In the section of the grievance labeled "Action Requested," plaintiff wrote, "Refill meds A.S.A.P.  Have hearing with pain management.  This is second 602.  Saw nurses and doctors in plenty of time for refill.  Just not being done."  (Id.)

At the bottom of the grievance, a handwritten note states, "To CMO for emer review."  (Id.)  After that is another handwritten note stating, "9-10-8.  Not an emergency.  Saw PCP yest."  (Id.)  The name of the person who signed the note is not legible.  (Id.)

In his objections, plaintiff alleges that he saw defendant Miranda on September 9, 2008, in response to his September 7, 2008 grievance.  Plaintiff alleges that during this interview, all sick slips and 602s were discussed concerning plaintiff's many attempts to obtain his second surgery and medications.  Plaintiff also argues that this grievance was improperly screened out on the

9

1   grounds that it was not an emergency.  Plaintiff alleges that he did have a medical emergency

2   because he went "man down" two days later and turned out to be very ill because he had not

3   received his second surgery.  Plaintiff also states that he did not identify defendant Miranda in

4   this grievance because he did not know that defendant Miranda was his primary care provider.

5          For the following reasons, the undersigned finds that plaintiff's grievance filed September

6   7, 2008, did not administratively exhaust his claim alleging that defendant Miranda failed to

7   return him to Reno for surgery.  "'[A] grievance suffices if it alerts the prison to the nature of the

8   wrong for which the redress is sought.'"  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)

9   (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).)  Plaintiff's September 7, 2008

10  grievance did not request that plaintiff be returned to Reno for surgery.  Instead, the focus of this

11  grievance was plaintiff's alleged failure to receive pain medication.   Although the grievance

12  stated that plaintiff was supposed to have received surgery "a few weeks ago," the grievance did

13  not request that plaintiff be returned to Reno for surgery.

14         In their further briefing, defendants state that plaintiff's appeal was not screened out

15  because it was determined not to be an emergency.  Defendants state that administrative appeals

16  deemed to involve emergencies are addressed in shorter time periods.  See Cal. Code Regs., tit.

17  15, § 3084.7.  In other words, appeals labeled as emergencies by inmates are not screened out

18  because they are determined not to be an emergency.  Defendants state that the criteria for which

19  administrative appeals may be rejected make no reference to emergency versus regular appeals.

20  See Cal. Code Regs., tit. 15, § 3084.3.  Defendants state that HDSP did not retain a copy of

21  plaintiff's appeal so no further information is available as to the reason it was screened out.

22         Because plaintiff's September 7, 2008 grievance did not raise the issue of his failure to be

23  returned to Reno for surgery, the undersigned will not address the issue of whether this grievance

24  was improperly screened out.

25         In their further briefing, defendants also argue that plaintiff's alleged interview with

26  defendant Miranda on September 9, 2008, in response to the appeal where plaintiff allegedly

27  raised the issue of his failure to be returned to Reno for surgery did not exhaust his administrative

28  remedies.  Defendants state that the appropriate inquiry is whether the information contained in

10

1  the appeal put prison officials on notice of the problem.

2          As noted above, to exhaust administrative remedies, an inmate must file a grievance and

3  follow the proper procedures to see that grievance to the third level of review.  The grievance

4  must alert prison officials to the nature of the wrong for which redress is sought.  Griffin, 557

5  F.3d at 1120.  The undersigned is aware of no authority holding that an inmate exhausts his

6  administrative remedies by raising a new issue in an interview regarding a grievance raising a

7  separate issue.  It would be very difficult for courts to evaluate the issue of administrative

8  exhaustion if they were required to also consider unrecorded interviews made in connection with

9  administrative appeals in order to determine whether issues not specifically raised in the written

10  appeals were discussed.  For these reasons, the undersigned finds that plaintiff's alleged interview

11  with defendant Miranda did not exhaust plaintiff's claim regarding his failure to be returned to

12  Reno for surgery.

13          For the reasons discussed above, the undersigned finds that plaintiff failed to exhaust his

14  administrative remedies as to his claim that defendant Miranda failed to return him to Reno for

15  surgery.  Accordingly, this claim should be dismissed.

16          *Analysis — Claim Against Defendant Clark Alleging Denial of Access to Medical Care*

17  *and Medication on September 9, 2008*

18          Plaintiff alleges that on September 9, 2008, defendant Clark denied him access to medical

19  care and medication.  Defendants argue that plaintiff failed to administratively exhaust this claim,

20  referring to the declarations of D. Frazier and L. Zamora attached to their motion to dismiss.

21          In his declaration, D. Frazier states that there is no record of plaintiff filing a health care

22  appeal complaining about defendant Clark denying him access to medical care on September 9,

23  2008.  (ECF No. 30-2 at 2.)  The exhibits attached to D. Frazier's declaration support this claim.

24  In his declaration, L. Zamora states that plaintiff did not file a grievance alleging that defendant

25  Clark denied him access to medical care on September 9, 2008.  (ECF No. 30-3 at 2-3.)  The

26  exhibits attached to L. Zamora's declaration support this statement.

27          In his opposition, plaintiff argues that the grievance he filed on August 28, 2008, referred

28  to in D. Frazier's declaration, exhausted his claim that defendant Clark denied him his medication

1   on September 9, 2008.  As noted by defendants in their reply, this appeal was filed before these

2   allegations against defendant Clark arose.  Therefore, this appeal could not have put prison

3   officials on notice of this claim.

4        For the reasons discussed above, the undersigned finds that plaintiff failed to

5   administratively exhaust his claim that defendant Clark denied him access to medical care and

6   medication on September 9, 2008.  Accordingly, defendants' motion to dismiss this claim should

7   be granted.

8   Failure to State a Claim

9       *Legal Standard*

10      Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for

11  "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In

12  considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court

13  must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89

14  (2007), and construe the pleading in the light most favorable to the plaintiff.  Jenkins v.

15  McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir.

16  1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more

17  than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a

18  cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words,

19  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim

21  upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.

22  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

23  draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556

24  U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes

25  of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co.,

26  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

27      A motion to dismiss for failure to state a claim should not be granted unless it appears

28  beyond doubt that the plaintiff can prove no set of facts in support of his claims which would

1   entitle him to relief.  <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984).  In general, pro se

2   pleadings are held to a less stringent standard than those drafted by lawyers.  <u>Haines v. Kerner</u>,

3   404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  <u>Bretz</u>

4   <u>v. Kelman</u>, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal

5   interpretation of a pro se complaint may not supply essential elements of the claim that were not

6   pled.  <u>Ivey v. Bd. of Regents of Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982).

7        *Analysis — Excessive Force Claim Against Defendants McBride and Kelly*

8        Defendants argue that plaintiff has not stated a colorable excessive force claim against

9   defendants McBride and Kelly.  In the complaint, plaintiff alleges only that defendants McBride

10  and Kelly used excessive force against him.  (ECF No.1 at 11.)  Plaintiff does not include any

11  allegations to support this claim.  Standing alone, the statement that defendants used excessive

12  force is so vague and conclusory that the court cannot determine whether plaintiff has a colorable

13  excessive force claim against these defendants.  The exhibits attached to the complaint also fail to

14  clarify this claim.

15       In his opposition, plaintiff alleges that there are photographs of his injuries caused by

16  defendants McBride and Kelly.  (ECF No. 46 at 5.)  While plaintiff may have photographs of the

17  injuries caused by the alleged excessive force, his complaint contains no allegations describing

18  defendants' conduct.

19       For the reasons discussed above, defendants' motion to dismiss plaintiff's excessive force

20  claim against defendants McBride and Kelly is granted with leave to amend.  If plaintiff includes

21  this claim in an amended complaint, he must specifically describe defendants' conduct on which

22  the excessive force claim is based.

23       *Analysis – Claim that Defendant Clark Failed to give Plaintiff Medication on December*

24  *23, 2008*

25       Plaintiff alleges that defendant Clark violated plaintiff's Eighth Amendment right to

26  adequate medical care on December 23, 2008.  In particular, plaintiff alleges that he was at his

27  door with his water and identification waiting for medication to be distributed.  (ECF No. 1 at

28  10.)  Defendant Clark allegedly passed plaintiff by, claiming that plaintiff had the wrong light on.

1   (Id.)  Defendant Clark accused plaintiff of refusing his medication even though plaintiff turned

2   the right light on right away.  (Id.)

3        Defendants argue that plaintiff's claim that defendant Clark violated his Eighth

4   Amendment rights on December 23, 2008, by failing to give him his medication is not colorable.

5    Defendants argue that a mere delay in treatment does not constitute a violation of the Eighth

6   Amendment, unless the delay or denial was harmful.  See McGuckin v. Smith, 974 F.2d 1050,

7   1060 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

8   (9th Cir. 1997) (en banc).  The harm caused by delay need not necessarily be "substantial."

9   McGuckin, 974 F.2d at 1060 & n.2.

10        Defendants argue that plaintiff does not allege that he suffered any harm as a result of not

11   receiving his medication on the one occasion alleged on December 23, 2008.  Defendants also

12   observe that plaintiff does not identify the type of medications he did not receive.  The

13   undersigned agrees that, as plead, plaintiff's claim against defendant Clark for failing to give him

14   his medication on December 23, 2008, does not state a colorable claim for relief.

15        In his opposition, plaintiff alleges that defendant Clark failed to give him pain medications

16   which caused him to suffer severe pain.  (ECF No. 46 at 6.)  Plaintiff also alleges that defendant

17   Clark refused to give him Flomax, which helped his urine flow and was very important due to his

18   kidney stone situation.  (Id.)  Because plaintiff's opposition identifies the medication he did not

19   receive and the injuries suffered, the motion to dismiss this claim is granted with leave to amend.

20   Plaintiff should include the allegations identifying the missed medication and the injuries he

21   suffered as a result of not receiving them in his amended complaint.  Plaintiff should also address

22   when he next received these medications.  A brief deprivation of medication with no

23   consequences does not state a colorable Eighth Amendment claim.

24   Claims Brought Pursuant to the Americans with Disabilities Act ("ADA")

25        Defendants argue that plaintiff's claim that defendants ignored his ADA status does not

26   state a colorable ADA claim.  Plaintiff does not clearly raise an ADA claim.  However, to the

27   extent plaintiff is attempting to raise an ADA claim, the undersigned finds that plaintiff's claim

28   that defendants' ignored his ADA status does not state a colorable ADA claim.

14

1    Title II of the ADA "prohibit[s] discrimination on the basis of disability." <u>Lovell v.</u>

2  <u>Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual

3  with a disability shall, by reason of such disability, be excluded from participation in or be denied

4  the benefits of the services, programs, or activities of a public entity, or be subject to

5  discrimination by such entity."  42 U.S.C. § 12132.  Title II of the ADA applies to inmates within

6  state prisons.  <u>Pennsylvania Dept. of Corrections v. Yeskey</u>, 524 U.S. 206 (1998); <u>see also</u>

7  <u>Simmons v. Navajo County, Arizona</u>, 609 F.3d 1011, 1021 (9th Cir. 2010).

8    To establish a violation of Title II of the ADA, a plaintiff must show that (1) he is a

9  qualified individual with a disability; (2) he was "excluded from participation in or denied the

10 benefits of the public entity's services, programs, or activities, or was otherwise discriminated

11 against by the public entity;" and (3) "such exclusion or discrimination, or denial of benefits was

12 because of his disability." <u>Simmons</u>, 609 F.3d at 1021 (citations omitted).

13    Plaintiff does not claim that he was excluded from a service, program or activity as a

14 result of defendants' alleged failure to acknowledge his ADA status.  Plaintiff's claim that

15 defendants would not allow him to put on his ADA vest also does not rise to an ADA claim.

16 Accordingly, to the extent plaintiff raises ADA claims, defendants' motion to dismiss is granted.

17 <u>Conclusion</u>

18    For the reasons discussed above, the undersigned recommends that defendants' motion to

19 dismiss the claims that defendant Miranda failed to return plaintiff to Reno for surgery, and that

20 defendant Clark denied plaintiff access to medical care and medication on September 9, 2008, be

21 dismissed on the grounds that they are not administratively exhausted.  Plaintiff shall not include

22 these claims in an amended complaint.

23    Plaintiff's claims alleging excessive force by defendants McBride and Kelly on December

24 23, 2008, and that defendant Clark failed to give him his medication on that date, are dismissed

25 with leave to amend.  Plaintiff is informed that an amended complaint must include all claims

26 against all defendants.  In other words, the court cannot refer to a prior pleading in order to make

27 plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be

28 complete in itself without reference to any prior pleading.

Plaintiff has indicated that he intends to file an amended complaint containing his claims alleging excessive force against defendants McBride and Kelly on December 23, 2008, and that defendant Clark failed to give him his medication on that date.  If plaintiff intends to proceed on those claims as well as those claims which have not been dismissed, his amended complaint should include the following claims: 1) defendant Miranda allowed plaintiff's medications to expire; 2) on September 18, 2008, defendant Clark denied plaintiff his medication; 3) on December 23, 2008, defendants McBride and Kelly made plaintiff go outside in his underwear and shower shoes when there was snow on the ground; 4) on December 23, 2008, defendants Leon and Morris transported plaintiff outside while he was wearing underwear and shower shoes; 5) on December 23, 2008, defendants Leon and Morris used excessive force causing plaintiff to suffer back injuries; 6) on December 23, 2008, defendant Hougland applied leg irons too tightly; 7) on December 23, 2008, defendants McBride and Kelly used excessive force; and 8) on December 23, 2008 defendant Clark failed to give plaintiff his pain medication.

On November 14, 2013, Judge England granted defendant LaJeuenesse's motion to dismiss with leave to amend.  If plaintiff intends to amend his claims against defendant LaJeuenesse, his amended complaint must include his claims against this defendant as well.

The court will order dismissal of those claims and defendants not included in the amended complaint.

Accordingly, IT IS HEREBY ORDERED that defendants' motion to dismiss (ECF No. 30) plaintiff's excessive force claim against defendants McBride and Kelly and his claim that defendant Clark failed to give him his medication on December 23, 2008, is granted with leave to amend; plaintiff is granted thirty days to file an amended complaint; defendants' response to the amended complaint is due twenty days thereafter; if plaintiff does not file an amended complaint, defendants shall file an answer to the original complaint within forty-five days of the date of this order;

IT IS HEREBY RECOMMENDED that defendants' motion to dismiss (ECF No. 30) plaintiff's claims alleging that defendant Miranda failed to return plaintiff for surgery and that defendant Clark denied plaintiff medical care and medication on September 9, 2008, be granted

16

1   on grounds that these claims are not exhausted.

2           These findings and recommendations are submitted to the United States District Judge

3   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

4   after being served with these findings and recommendations, any party may file written

5   objections with the court and serve a copy on all parties.  Such a document should be captioned

6   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

7   objections shall be filed and served within fourteen days after service of the objections.  The

8   parties are advised that failure to file objections within the specified time may waive the right to

9   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

10  Dated:  December 23, 2013

11

12  kim2154.mtd(3)                              KENDALL J. NEWMAN
                                                UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    17